Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Case No. 23-32824-pcm7 |
|---|---|
| TRACY LAMPRON CLOUD, Debtor. | MEMORANDUM DECISION[1] |

Tracy Lampron Cloud (Debtor) filed a chapter 7[2] bankruptcy petition on December 4, 2023. Case No. 23-32827-pcm7 (Bankr. D. Or.). Ruth Ann Munger (Munger) moves to dismiss the bankruptcy case pursuant to § 707(c). ECF No. 34. Munger is the Personal Representative of the Estate of Philip Cloud (the Probate Estate).[3] Declaration of Erin K. Olson, Exhibit 2. Section 707(c)(2) provides that "the court, on a motion by the victim of a crime of violence . . . may when it is in the best interest of the victim dismiss a voluntary case filed under [chapter 7]

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

[2] Unless otherwise noted, all references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101, et. seq.

[3] All references to "Munger" are to Munger in her representative capacity.

Page 1 – MEMORANDUM DECISION

by a debtor who is an individual if such individual was convicted of such crime." For the reasons explained below, the court will grant the motion to dismiss.

BACKGROUND AND FACTS

Philip Cloud died in 2019. Declaration of Erin K. Olson, Exhibit 3. At the time of his death, Philip Cloud and Debtor were married. In 2021, Debtor was convicted of the crime of Murder in the Second Degree with a Firearm under ORS 163.115 for killing Philip Cloud and sentenced to life in prison. Declaration of Erin K. Olson, Exhibits 8, 9. The jury in the criminal case rejected Debtor's claim that she acted in self-defense. Declaration of Erin K. Olson, Exhibit 10. Following the conviction, the state court entered a Supplemental Judgment and Amended Restitution Notice (the Restitution Award) awarding the Probate Estate restitution in the amount of $1,157,967.[4] Declaration of Erin K. Olson, Exhibit 11. Debtor has appealed her conviction and the Restitution Award. Declaration of Erin K. Olson, Exhibit 13. The appeal remains pending.

After Philip Cloud's death, Munger commenced litigation in state and federal courts to prevent Debtor from receiving any of Philip Cloud's probate assets by intestate succession and to disqualify Debtor from receiving Philip Cloud's non-probate, ERISA-governed assets (referred to collectively as the Slayer Cases). Declaration of Erin K. Olson, Exhibits 14, 18. Munger prevailed in the Slayer Cases and Debtor appealed. Declaration of Erin K. Olson, Exhibits 15, 20. The Oregon Court of Appeals dismissed Debtor's appeal in the state action. Declaration of Erin K. Olson, Exhibit 16. On March 21, 2024, the Oregon Supreme Court denied review of that

---

[4] Munger's attorney clarified at the March 25, 2024, hearing that, although the Restitution Award shows the State of Oregon to be the "judgment creditor," the award is payable to Munger. See also Declaration of Erin K. Olson, Exhibit 11.

decision. Debtor's appeal in the federal action remains pending. Declaration of Erin K. Olson, Exhibit 22.

Following Debtor's criminal conviction, Munger initiated a wrongful death case against Debtor in state court (the Wrongful Death Case). The state court granted summary judgment in favor of Munger on the questions of whether Debtor caused, and was liable for, Philip Cloud's death. Declaration of Erin K. Olson, Exhibit 27. The state court ultimately entered judgment in favor of Munger, awarding her damages in the amount of $754,602 and costs of $1,614.15. Declaration of Erin K. Olson, Exhibits 29, 30. Debtor appealed and the appeal remains pending.

In her bankruptcy Schedule A/B: Property, Debtor lists an ownership interest in real property located on Germantown Road in Portland, Oregon (the Real Property). ECF No. 19. At the time of his death, Philip Cloud and Debtor co-owned the Real Property. In January of 2023, Munger filed a state court complaint against Debtor and certain individuals who were residing at the Real Property seeking, among other things, authority to sell the Real Property and distribute the net proceeds "[b]etween the owners of the Property; according to their respective shares[.]" Declaration of Erin K. Olson, Exhibit 34. Debtor's bankruptcy petition operated to stay that action.

In July of 2023, Munger obtained an order from the probate court, over Debtor's objection, granting Munger authority to, among other things, use funds of the Probate Estate to bring the Real Property mortgage and property taxes current, and make repairs to and insure the Real Property. Declaration of Erin K. Olson, Exhibit 36. In October of 2023, Munger's attorney received a letter from Washington County stating that the septic system at the Real Property had failed in a manner that constitutes a public health hazard and threatening further legal action if the situation was not remedied within 30 days. Declaration of Erin K. Olson, Exhibit 38.

Munger states, and it appears, that it was her efforts to collect the judgment in the Wrongful Death Case by various garnishments and attempting to sell the Real Property that prompted Debtor to file her chapter 7 petition.

On February 12, 2024, after Debtor filed her response and affidavit in opposition to the motion to dismiss, ECF Nos. 63, 64, the court entered an order allowing Munger to file a reply. ECF No. 66. The order states that "[n]o further briefing will be allowed." Id. Debtor nevertheless filed two additional briefs in opposition to the motion to dismiss. ECF Nos. 80, 86. Munger's attorney moved to strike the additional briefs at the hearing on March 25, 2024. The court declines to strike the additional briefs and, in deciding to grant the motion to dismiss, has considered all pertinent documents in the record, including Debtor's additional briefs.

ANALYSIS

As stated above, § 707(c)(2) allows the court to dismiss a chapter 7 case when the debtor has been convicted of a crime of violence and dismissal is in the best interest of the victim of that crime. "[T]he term 'crime of violence' has the meaning given such term in section 16 of title 18[.]" § 707(c)(1)(A). Under 18 U.S.C. § 16, a crime of violence includes "an offense that has as an element the use . . . of physical force against the person . . . of another." 18 U.S.C. § 16(a).

Debtor was convicted of criminal homicide, which unquestionably is a crime of violence within the meaning of § 707(c). Munger, in her capacity as personal representative of the Probate Estate, qualifies as a victim of that crime. See 18 U.S.C. § 3663A(a)(1) (in sentencing proceeding for "crime of violence" under 18 U.S.C. § 16, victim of offense is estate of deceased person); ORS 137.103(4) (for purposes of criminal restitution, "victim" includes the estate of a deceased person). Debtor does not dispute either proposition. Debtor argues, however, that dismissal under § 707(c) is not appropriate, because she has appealed her criminal conviction

and believes it likely that the conviction will be overturned on appeal. The court rejects Debtor's argument for two reasons.

First, the language of § 707(c) does not support Debtor's position. When a statute's language is plain, the sole function of the court is to enforce the statute according to its terms, unless doing so would produce an absurd result. Blausey v. United States Trustee, 552 F.3d 1124, 1132 (9th Cir. 2009). Section 707(c)(2) states that a court may dismiss a voluntary individual chapter 7 case filed by a debtor who "was convicted of" a crime of violence. Congress could have, but did not, prohibit a court from dismissing a case where the conviction is on appeal. In addition, "[t]he general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." Id. at 1133. Section 707(c)(3) prohibits the court from dismissing a case "if the debtor establishes by a preponderance of the evidence that" the chapter 7 case "is necessary to satisfy a claim for a domestic support obligation." Congress chose to designate one specific exclusion to the operation of § 707(c)(2) and it would be inappropriate for the court to create a second exception not enumerated by Congress.

Second, Debtor is precluded from relitigating her criminal conviction in this court. A federal court applies state law to determine the preclusive effect of a state court judgment. Strong v. Countrywide Home Loans, Inc., 812 F. App'x 728, 729 (9th Cir. 2020); In re Italiane, 632 B.R. 662, 670 (9th Cir. BAP 2021). Under Oregon law, a criminal judgment may be given preclusive effect in a subsequent civil action even if the criminal judgment is on appeal. Berg v. Benton, 297 Or. App. 323, 328 (2019).

> Under the doctrine of issue preclusion, "[i]f one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:" (1) "[t]he issue in the two proceedings is identical"; (2) "[t]he issue was

> actually litigated and was essential to a final decision on the merits in the prior proceeding"; (3) "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue"; (4) "[t]he party sought to be precluded was a party or was in privity with a party to the prior proceeding"; and (5) "[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect." Nelson v. Emerald People's Utility Dist., 318 Or. 99, 104, 862 P.2d 1293 (1993).

Id. at 327. Berg expressly rejected the proposition that the pendency of an appeal prevents a court in a civil matter from giving preclusive effect to a criminal judgment.

The United States District Court for the District of Oregon has already ruled that Debtor is precluded from relitigating whether she murdered Philip Cloud in the case initiated by Munger to prevent Debtor from receiving Philip Cloud's non-probate ERISA-governed assets. See Case No. 3:22-cv-00263-HZ, Doc. 63 (May 3, 2023). The District Court held:

> Cloud's conviction was for second degree murder, which is a serious offense. The Court, therefore, finds Cloud was motivated to fully litigate the charge. The issue on which the prior conviction is offered (whether Cloud murdered Philip Cloud) was decided in the criminal trial and Cloud was a party to the criminal case. In addition, the criminal trial was a full and fair proceeding. Specifically, the record reflects Cloud was represented in her criminal case and it included several pretrial evidentiary motions filed by Cloud and heard by the court, including motions to suppress and motions in limine; eight days of trial that included Cloud's claim of self defense; and defense post-trial motions, including a motion for judgment of acquittal and a motion for new trial. Cloud called 18 defense witnesses, including a forensic accountant and several mental-health and domestic-violence professionals, and submitted 28 defense exhibits. The Court finds on this record that Cloud had a full and fair trial sufficient to prevent a "conviction[] of doubtful validity from being used" in this matter. . . . The Court, therefore, applies collateral estoppel to bar Cloud from relitigating in this action whether Cloud murdered Philip Cloud.

Id. at pp. 10-11. The evidentiary record supplied by Munger in this matter makes it clear that all of the requirements are satisfied and Debtor's criminal conviction should be given preclusive effect in this court.[5]

The only remaining question as to whether the requirements of § 707(c)(2) are met is whether dismissal is in the best interests of the victim of Debtor's crime. For the reasons set out in pages 18-20 of the motion to dismiss, ECF No. 34, the court concludes that Munger has demonstrated that dismissal is in her best interest.

Section 707(c) allows, but does not require, a court to dismiss a chapter 7 case when the statutory requirements are met. The court was unable to locate any cases that address the factors a court should consider when exercising its discretion under § 707(c). For the reasons that follow, dismissal is appropriate for this case.

First, a degree of deference to the wishes of the victim of a crime is appropriate in the context of deciding whether to dismiss a case under § 707(c). Section 707(c) is a remedial statute and the wishes of the victim should be respected. In the analogous circumstance of deciding whether dismissal or conversion of a chapter 11 case is in the best interest of the creditors and estate under § 1112(b), "the parties will be the best judge of their own best interests, and if all of the parties agree on one course of action, the court should accommodate their desire." 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Richard Levin & Henry J. Sommer eds., 16th ed. 2024).

---

[5] The result would be the same under federal preclusion law. The Ninth Circuit Court of Appeals has held that a pending appeal does not affect a judgment's finality for preclusion purposes and that "the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment." Collins v. D.R. Horton, Inc., 505 F.3d 874, 883 (9th Cir. 2007).

Second, this is essentially a two-party dispute. There is one secured creditor on the Real Property, but that debt, along with property taxes, are current because the Probate Estate paid them. Declaration of Erin K. Olson, ¶ 35. Debtor's Schedule E/F: Creditors Who Have Unsecured Claims, lists the total debt owed to Munger in the amount of $2,043,000. The scheduled debts owed to unsecured creditors other than Munger would be considered immaterial in any bankruptcy case but are especially so when compared to the amount Debtor owes to Munger.[6] Bankruptcy relief generally is not appropriate to address two-party disputes that are best resolved in state court. In re Silberkraus, 253 B.R. 890, 905-06 (Bankr. C.D. Cal. 2000). One of the policies of the bankruptcy system is to allow for a ratable distribution of the proceeds of a debtor's nonexempt assets. In this case, dismissal does not frustrate that goal, because there are few, if any, other creditors entitled to a distribution of Debtor's assets.

Third, and perhaps in recognition of the fact that this is essentially a two-party dispute, the chapter 7 trustee does not oppose dismissal. The trustee's non-opposition is an important factor supporting dismissal in light of a chapter 7 trustee's statutory duties and status as a fiduciary of the bankruptcy estate.

Fourth, continuation of this bankruptcy cases will increase the expense incurred by the parties with no corresponding benefit. There is a long and complex history of litigation between the parties, most of which has not been, but will need to be, litigated to conclusion. If the bankruptcy case proceeds, Munger will incur significant additional expense in seeking relief from stay, litigating the dischargeability of the debts owed to her under § 523 and, possibly,

---

[6] To date, only one claim has been filed in the case. Munger filed an objection to that claim on the basis that it likely was the result of identity theft, a contention not disputed by Debtor. The claimant did not file a response to Munger's claim objection and the deadline for doing so has passed.

challenging Debtor's entitlement to a discharge under § 727, among other matters that are sure to arise.[7] The history of prepetition litigation between the parties and bankruptcy case activity to date indicate that continuation of this case will cause Munger substantial expense and delay.[8]

Section 707(c)(2) refers only to the interests of the victim of the crime. As a result, a court deciding a motion to dismiss under § 707(c) should not consider the potential benefit to a debtor of remaining in bankruptcy. Section 707(c)(2) is unusual in that the Bankruptcy Code often requires or allows a court to balance the respective interests of multiple parties. Even if a balancing test was appropriate, and the court does not believe that it is, continuation of this bankruptcy case would not afford Debtor the relief she seeks – recovery of assets to fund her litigation activities.

The filing of a chapter 7 case creates an estate comprised of virtually all of a debtor's assets. In a chapter 7 case, the trustee, not the debtor, controls estate assets. A chapter 7 trustee has a statutory duty to liquidate the bankruptcy estate for the benefit of the debtor's creditors, not the debtor. Here, the estate assets include the Real Property and Debtor's civil causes of action, and, as discussed above, Munger is essentially Debtor's only unsecured creditor. As Munger points out, if this case proceeds, the chapter 7 trustee likely would need to incur significant legal

---

[7] Munger's attorney argued at the March 25, 2024, hearing that the Restitution Award would be deemed automatically nondischargeable in a chapter 7 case. The court expresses no position on that argument.

[8] At the time of Philip Cloud's death, Debtor served as the trustee of a trust formed by Philip Cloud's father. Declaration of Erin K. Olson, ¶ 24. After Debtor's arrest, a third-party initiated state court litigation (the Trust Case) to, among other things, remove Debtor as trustee and recover funds she allegedly misappropriated. Id. Debtor counterclaimed for trustee fees. Id. Debtor did not disclose the Trust Case in her bankruptcy schedules or Statement of Financial Affairs. She has filed at least three appeals of orders entered in the Trust Case, each of which was dismissed on the appellate court's own motion. Declaration of Erin K. Olson, Exhibit 26. Debtor's filing of this bankruptcy case stayed the Trust Case along with some of the other cases discussed above.

expenses in connection with the outstanding litigation, which will only diminish the funds available to pay the victim of Debtor's crime. It is also worth noting that the Real Property is an asset of the bankruptcy estate for which the Trustee is responsible and, unless the situation has been remedied, it presents a public health hazard because of the failed septic system.

## CONCLUSION

For the reasons stated above, the court will prepare and enter an order granting the motion to dismiss.

###